IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STUSSY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 26-cv-01939 |

## COMPLAINT

Plaintiff Stussy, Inc. ("Plaintiff" or "Stussy") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers and, on information and belief, have sold products using infringing and counterfeit versions of Stussy's federally registered trademarks to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Stussy substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Stussy to combat e-commerce store operators who trade upon Stussy's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products").  Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers.  Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Stussy is forced to file this action to combat Defendants' counterfeiting of its federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.  Stussy has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Stussy, Inc. is a corporation organized and existing under the laws of California with its principal place of business at 17426 Daimler Street, Irvine, California.

5. Founded in 1980, Stussy is an apparel company known for pioneering and shaping modern streetwear for decades. The Stussy brand quickly became known for apparel and accessories.

6. The Stussy brand has a distinguished history within streetwear and fashion that has been widely recognized throughout the world. This reputation was reinforced by the International Stussy Tribe, a global network of musicians, DJs, artists, and creatives who adopted the Stussy brand organically and helped establish Stussy as a cultural movement. Stussy likewise achieved international fame without traditional advertising campaigns. Stussy's grassroots approach to building community and cultural influence has been credited with helping shape the streetwear movement itself.

7. Stussy designs, manufactures, and sells a wide range of apparel and accessories, including men's and women's clothing, t-shirts, jackets, hats, sunglasses, and backpacks (collectively, the "Stussy Products"). Over the years, Stussy Products have become enormously popular and even iconic, driven by Stussy's quality standards and innovative designs and brand image.

8. Stussy Products are sold directly to consumers in the U.S. and internationally at official Stussy stores ("Chapters"), as well as through authorized retailers such as premium boutiques, department stores, and local streetwear shops throughout the United States, including in Illinois. From the beginning, Stussy's strategy was to sell Stussy Products in limited amounts to high-quality accounts to preserve its brand.

9. Stussy also does weekly launches, including collaborations between Stussy and other famous brands. Often these collaborations sell out within the first few minutes of the launch. The launches are discussed online prior to the release.

10. It is common for fans of the Stussy brand to wait in long lines outside of Chapters for drops of new products, collaborations, and limited edition products.

11. Stussy operates a website at www.stussy.com where it promotes and sells genuine Stussy Products. Sales of Stussy Products via the stussy.com website are significant. The stussy.com website features proprietary content, images and designs exclusive to Stussy.

12. Stussy is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Stussy has used its trademarks (collectively, the "STUSSY Trademarks") on and in association with its line of streetwear apparel and accessories. Stussy incorporates a variety of distinctive marks in its various Stussy Products. Consequently, the United States Patent and Trademark Office has granted Plaintiff multiple federal registrations for the STUSSY Trademarks. Stussy uses the STUSSY Trademarks in connection with the marketing of its Stussy Products. The STUSSY Trademarks, including, but not limited to the registered trademarks listed below, are famous and valuable assets of Stussy.

| Registration No. | Trademark |
|---|---|
| 2,232,002 2,370,710 2,176,426 3,359,114 3,112,126 4,494,955 | STUSSY |

| Registration No. | Trademark |
|---|---|
| 2,504,298 | STÜSSY |
| 2,060,941<br>2,393,339<br>3,334,366<br>2,408,329<br>2,395,545 | *Stüssy* (stylized script logo) |
| 5,564,336<br>5,564,335<br>2,357,804<br>5,564,337 | *Stüssy* (stylized script logo) |
| 2,357,805<br>1,449,390 | *Stüssy* (stylized script logo) |
| 2,225,736<br>3,426,173<br>2,399,916<br>2,343,524 | SS interlocking circle logo |

| Registration No. | Trademark |
|---|---|
| 3,618,692 | |
| 3,752,265<br>5,256,784 | |
| 6,885,821<br>7,115,443<br>5,291,490 | |

13. The above U.S. registrations for the STUSSY Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the STUSSY Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the STUSSY Trademarks pursuant to 15 U.S.C. § 1057(b). The STUSSY Trademarks have been used exclusively and continuously by Stussy, and have never been abandoned. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the STUSSY Trademarks included in the above table.

14. The STUSSY Trademarks are exclusive to Stussy and are displayed extensively on Stussy Products and in Stussy's marketing and promotional materials. Stussy Products have been

among the most popular streetwear apparel in the world and have been extensively promoted at great expense. In fact, Stussy expends millions of dollars annually promoting and marketing the STUSSY Trademarks. Stussy Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Stussy name and the STUSSY Trademarks have become famous throughout the United States.

15. The STUSSY Trademarks are distinctive when applied to Stussy Products, signifying to the purchaser that the products come from Stussy and are consistent with Stussy's quality standards. Whether Stussy manufactures the products itself or licenses others to do so, Stussy has ensured that products bearing the STUSSY Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the STUSSY Trademarks is consistent with the highest quality standards. The STUSSY Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the STUSSY Trademarks is of incalculable and inestimable value to Stussy.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Stussy. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions or redistributes from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Stussy to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Stussy will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Stussy brand has resulted in significant counterfeiting of the STUSSY Trademarks. Consequently, Stussy has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Stussy has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products on online marketplace platforms such as Amazon, eBay, Temu, and PayPal, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year— accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[3] *Id.; See also Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "e-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, have sold Counterfeit Products to residents of Illinois. Screenshots evidencing Defendants' infringing activity are attached as **Exhibit 2**.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

---

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "significantly enhanced vetting of third-party sellers" is necessary.
[5] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.
[6] *Id*. at 39.
[7] Chow, *supra* note 4, at 186-87.

authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from Plaintiff's website or another authorized retailer. Stussy has not licensed or authorized Defendants to use any of the STUSSY Trademarks, and none of the Defendants are authorized retailers of genuine Stussy Products.

22. Many Defendants also deceive unknowing consumers by using the STUSSY Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Stussy Products. Other e-commerce stores operating under the Seller Aliases omit using the STUSSY Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Stussy Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Defendants are collectively causing harm to Stussy's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Stussy.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Stussy's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Stussy. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working to knowingly and willfully, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Stussy, have knowingly and willfully used and continue to use the STUSSY Trademarks in connection with the advertisement,

distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the STUSSY Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Stussy.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Stussy hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered STUSSY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The STUSSY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Stussy Products offered, sold or marketed under the STUSSY Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the STUSSY Trademarks without Stussy's permission.

33. Stussy is the exclusive owner of the STUSSY Trademarks. Stussy's United States Registrations for the STUSSY Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Stussy's rights in the STUSSY Trademarks, and are willfully infringing and intentionally using counterfeits of the STUSSY Trademarks. Defendants' willful, intentional and unauthorized use of the STUSSY Trademarks is likely to

cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Stussy has no adequate remedy at law, and if Defendants' actions are not enjoined, Stussy will continue to suffer irreparable harm to its reputation and the goodwill of its well-known STUSSY Trademarks.

36. The injuries and damages sustained by Stussy have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37. Stussy hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Stussy or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Stussy.

39. By using the STUSSY Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Stussy has no adequate remedy at law and, if Defendants' actions are not enjoined, Stussy will continue to suffer irreparable harm to its reputation and the goodwill of its Stussy brand.

**PRAYER FOR RELIEF**

WHEREFORE, Stussy prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the STUSSY Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Stussy product or is not authorized by Stussy to be sold in connection with the STUSSY Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Stussy product or any other product produced by Stussy that is not Stussy's or not produced under the authorization, control, or supervision of Stussy and approved by Stussy for sale under the STUSSY Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Stussy, or are sponsored by, approved by, or otherwise connected with Stussy;

    d. further infringing the STUSSY Trademarks and damaging Stussy's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Stussy, nor authorized by Stussy to be sold or

offered for sale, and which bear any of Plaintiff's trademarks, including the STUSSY Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Stussy's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, Temu, eBay, and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the STUSSY Trademarks;

3) That Defendants account for and pay to Stussy all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the STUSSY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Stussy be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the STUSSY Trademarks;

5) That Stussy be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 20th day of February 2026.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiff Stussy, Inc.*